# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2693

_____

United States of America,        *
                                  *

        Appellee,           *

                                  *   Appeal from the United States
      v.                    *   District Court for the
                                  *   District of Nebraska.

David Arden Burling,         *
                                  *

        Appellant.         *

_____

Submitted: March 16, 2005
Filed: August 23, 2005

_____

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

David Burling pleaded guilty to conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1). The district court enhanced Burling's sentence under U.S.S.G. § 2D1.1, concluding that he possessed a dangerous weapon in connection with the offense. On appeal, Burling argues that the district court violated his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296 (2004), and the district court erred in applying the § 2D1.1 enhancement. We reverse and remand for resentencing.

## I. *Background*

On April 12, 2003, Dan Burling and his father, Carroll Burling, both Nebraska farmers, reported their 1998 Ford truck stolen. They suspected that Dan's brother, David Burling, had taken the vehicle. Two deputies located David and the pickup at a gas station. David was placed under arrest and an inventory search was performed on the pickup. The inventory search turned up a machete, also known as a corn knife, that was placed on the bench seat next to the driver, tucked between the seat and a few other items. A further search of the pickup revealed a bucket containing components and chemicals used in the production of methamphetamine.

David was charged by a two-count indictment for: 1) manufacturing and attempting to manufacture a substance containing methamphetamine;[1] and 2) intent to manufacture a mixture of methamphetamine. Count two of the indictment concerned the incident of April 12, 2003. David pleaded guilty to count one of the indictment. The plea agreement addressed several core issues pertinent to sentencing, but left unresolved issues relating to chemical injuries sustained by one officer while performing an inventory search of the pickup.

The United States District Court for the District of Nebraska requires every defendant seeking to plead guilty to file a petition to enter a plea of guilty. The petition to enter a plea of guilty contained a waiver consistent with the dictates of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The waiver explained:

> The Constitution requires that any fact that increases the penalty for a crime beyond the statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. By pleading guilty you waive and give up that right. By waiving and giving up that right, a judge will decide by the greater weight of the

---

[1]David had also been caught manufacturing and attempting to manufacture methamphetamine on January 26, 2003, and May 19, 2003.

evidence facts relevant to sentencing and the maximum penalty. The judge will decide these facts as he or she sees fit even if you and the government agree to different facts.

David signed the petition.

After the petition was filed, a Magistrate Judge conducted a voluntariness hearing. Consistent with his petition to enter a plea, David again agreed to waive his right to have a jury determine all the facts beyond a reasonable doubt. The Magistrate Judge recommended that David's plea be accepted, and a presentence report (PSR) was prepared. The PSR recommended that David's sentence be enhanced under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during the commission of the offense. The PSR identified the machete found in the pickup as the dangerous weapon justifying an enhancement. The PSR also recommended that David's sentence be enhanced for the injuries sustained by the officer conducting the inventory search under U.S.S.G. § 2D1.1(b)(5). David objected to both enhancements recommended by the PSR.

The district court conducted a sentencing hearing to determine the application of enhancements. After hearing evidence and argument, the district court concluded that the machete was a dangerous weapon under § 2D1.1(b)(1), but declined to enhance David's sentence for the injury caused to the officer under § 2D1.1(b)(5). The district court sentenced David to 104 months' imprisonment based on the Guidelines. That same day, the United States Supreme Court handed down its decision in *Blakely v. Washington*, 542 U.S. 296 (2004), and David filed a motion to correct his sentence pursuant to Fed. R. Crim. P. 35(a), arguing that his Sixth Amendment rights were violated. The district court denied the motion.

David then instituted the instant appeal arguing, in part, that *Blakely* requires him to be resentenced. In the meantime, the United States Supreme Court extended

the *Blakely* ruling to the Federal Guidelines in *United States v. Booker,* 125 S. Ct. 738 (2005). *Booker* resolved any remaining mystery about *Blakely's* impact. After *Booker*, David filed a Motion for Immediate Remand. We agreed to consider David's motion with the case on appeal.

## II. *Discussion*
### A. *Booker Claim*

The first issue on appeal is whether David waived his rights under *Booker* through his signed petition to enter a plea of guilty and his statements at the voluntariness hearing. We can find no court that has addressed whether a waiver made in a petition to enter a plea and designed to address *Apprendi* is sufficient to also waive Sixth Amendment claims under *Booker*. Of course, *Booker* is the logical extension of *Apprendi*. As such, the waiver in David's petition states that he waives the Constitutional requirement "that any fact that increases the penalty for a crime beyond the statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt." In *Booker* the Court ruled that it was reaffirming *Apprendi*: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756.

Justice Stevens hypothesized:

> First, it is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury. *Patton v. United States,* 281 U.S. 276, 312–313, 50 S. Ct. 253, 74 L. Ed. 854 (1930). In *Blakely* we explained that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 542 U.S., at ___, 124 S. Ct. at 2541. Such reasoning applies with equal force to sentences imposed under the Guidelines.

*Booker*, 125 S. Ct . 738, 774 (2005) (Steven's, J., dissenting).

Nonetheless, the waiver was not part of the plea agreement entered into between the government and Burling. It is axiomatic that plea agreements are contractual in nature and interpreted according to general contract principles. *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004). The plea agreement signed by both the government and David contains a merger clause stating "[n]o promises, agreements, or conditions have been entered into other than those set forth in this document, and none will be entered into unless in writing and signed by all parties." As indicated earlier, the government did not sign the petition to enter a plea of guilty.[2] As such, we refuse to find that David's waiver was part of his plea agreement.

David also reaffirmed his waiver to the Magistrate Judge during a voluntariness hearing. Federal Rule of Criminal Procedure 11(c)(1) cautions that a "court must not participate in [plea agreement] discussions." The court's power extends to either accept or reject the agreement between the defendant and the government. Fed. R. Crim. P. 11(c)(3). We have explained that "[a]ppellate courts have consistently prohibited district courts from interfering in the plea bargaining process" absent a showing of fraud. *United States v. Olesen*, 920 F.2d 538, 540 (8th Cir. 1990). As such, we hold that there was no enforceable waiver of David's substantive *Booker* rights.

David specifically preserved his *Booker* claim by objecting to his sentence with citation to *Blakely* and the Sixth Amendment. *See United States v. Pirani*, 406 F.3d 543, 550 (2005) (en banc) (holding that a *Booker* claim is preserved when the defendant makes "a specific reference to *Apprendi* or *Blakely* or the Sixth Amendment."). Here the district court made factual determinations while applying the Guidelines in a mandatory fashion. Accordingly, the district court understandably erred under *Booker*. Furthermore, because the court's fact finding increased the Guidelines range, the error was not harmless. *See United States v. Hadash*, 408 F.3d

_____

[2]The government did attest to reviewing the petition to enter a plea of guilty in a certificate of prosecuting attorney; however, the petition itself was signed solely by David.

1080, 1082 (8th Cir. 2005) (explaining that an error is harmless when the district court would have imposed the same sentence absent the error). Accordingly, we must reverse and remand for resentencing consistent with *Booker*.

B. *Application of Sentencing Guidelines*

David also challenges the court's application of certain enhancements under the Guidelines. On remand, the district court will be required to consult the Guidelines along with the other factors listed in 18 U.S.C. § 3553(a) in fashioning a reasonable sentence. *United States v. Booker*, 125 S. Ct. 738, 764–65 (2005). Because application of the Guidelines will no doubt be an issue on remand, we address David's claim of error here.

We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo. *United States v. Campbell*, 410 F.3d 456, 466 (8th Cir. 2005). David argues that the court erred in applying an enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during the commission of the offense. U.S.S.G. § 2D1.1(B)(1) provides for a two-level increase in offense level if the defendant possessed a dangerous weapon during the commission of the crime. We review the district court's determination that David possessed a dangerous weapon within the meaning of § 2D1.1(b) for clear error. *United States v. Payne,* 81 F.3d 759, 762 (8th Cir. 1996). Section 2D1.1(b)(1) mandates a two-level enhancement if the government proves by a preponderance of the evidence that the defendant possessed a weapon during the commission of a drug offense. *United States v. Braggs,* 317 F.3d 901, 904 (8th Cir. 2003); *United States v. Atkins,* 250 F.3d 1203, 1213 (8th Cir. 2001). The government need only establish that "a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." *Atkins,* 250 F.3d at 1214 (internal quotation and citation omitted). Constructive possession is sufficient to support a § 2D1.1(b)(1) enhancement. *Id.* at 1213. Proof of ownership, use, or actual possession is not necessary. *Id.* at 1213–14.

David first takes issue with classifying the 14-inch machete, also called a corn knife, as a dangerous weapon. Dangerous weapon means "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, application note 1(d). Use of this enhancement is not limited to the possession of a firearm and should be applied unless it is clearly improbable that the weapon was connected to the offense. U.S.S.G. § 2D1.1, application note 3. A knife can be a dangerous weapon under § 2D1.1. *See United States v. Scott*, 91 F.3d 1058, 1064 (8th Cir. 1996);*United States v. Russell*, 134 F.3d 171 (3d Cir. 1998). A 14-inch knife can readily be employed to cause death or serious bodily injury.[3]

Here, law enforcement found a 14-inch machete in a stolen vehicle operated by David. The machete was partially hidden between the seat and situated with the handle facing out. It was also within reaching distance from the driver's seat. Furthermore, the weapon was found in the truck while David was transporting materials used to manufacture methamphetamine. We recognize that the machete serves a dual purpose—a weapon, or a harvesting tool. However, under these circumstances, we cannot say that the district court clearly erred in concluding that the machete was a dangerous weapon under § 2D.1(b)(1). That is, it is not clearly improbable that the machete was connected to David's attempt to manufacture methamphetamine.

David next argues that because he did not plead guilty to the charge arising out of the events where the officers discovered the machete, the court improperly applied

---

[3]We note, but do not rely upon, a remarkably similar unpublished Fourth Circuit case. *See United States v. Mimms*, 155 F.3d 562, slip op. at 2 (4th Cir. 1998) (unpublished opinion) ("Further, because the knife was found in the car in which Mimms was traveling with the cocaine, and was located in the passenger door compartment readily accessible to the driver or to a passenger and within several feet of the cocaine base located in the wheel well, the connection between the knife and the drug offense was not clearly improbable.").

the § 2D1.1(b)(1) enhancement.[4] He cites no law that prohibits a district court from considering relevant conduct outside the conviction for which a defendant pleads guilty. Indeed, the Ninth Circuit has explained that a sentencing court may properly consider the possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction. *See United States v. Willard,* 919 F.2d 606 (9th Cir.1990), *cert. denied,* 502 U.S. 872 (1991). The district court found that David possessed the machete in connection with his attempt to manufacture methamphetamine. The district court did not err.

### III. *Conclusion*

David is entitled to be resentenced under the mandates of *Booker*; however we conclude that the district court ultimately applied the Guidelines appropriately. As such, while we must remand for resentencing, we are not instructing the district court to change the sentence in any relevant manner. Instead, the district court should fashion a reasonable sentence in accord with the factors listed in 18 U.S.C. § 3553(a).

_____

[4]The machete in this case specifically related to count two in the indictment, which went unprosecuted after David pleaded guilty to count one.