# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3467

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Stevie Lavell West, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 12, 2010
Filed:  July 16, 2010

_____

Before RILEY, Chief Judge, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The district court[1] sentenced Stevie Lavell West to concurrent terms of 324 months for conspiring to distribute cocaine base, in violation of 21 U.S.C. § 846, and possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He appeals, arguing that the district court erred in (1) denying his motion to suppress, (2) allowing the government to present false testimony, (3) applying a firearm enhancement, and (4) sentencing with an inadequate explanation and improper

_____

[1]The Honorable John A. Jarvey, United States Judge for the Southern District of Iowa.

reliance on the crack/powder ratio. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

On May 29, 2008, officers stopped West for crossing a roadway mid-block (jaywalking) and walking down the middle of a highway. An officer found crack cocaine in his pocket and arrested him. West admitted to dealing crack and agreed to be an informant. Officers arrested him months later after they decided he was no longer cooperating.

The district court initially granted West's motion to suppress because he did not obstruct traffic by jaywalking, as required under Iowa Code § 321.328. On reconsideration, the court denied suppression, finding probable cause for the stop based on Iowa Code § 321.326, which requires walking on the left side of a highway.

At trial, co-conspirators testified to selling crack to West. They said that he bought around 3.5 to 7 grams of crack almost daily for months at a time from 2004 to 2008. Another witness stated West began dealing crack in 2004. This dealing was often "nonstop," continuing until 2008. A jury found West guilty of conspiracy to distribute at least 50 grams of crack cocaine and possession with intent to distribute at least five grams.

At sentencing, a witness testified to seeing West with a gun twice before the beginning date of the conspiracy. The district court found sufficient connection between the firearm and the drug activity for a sentence enhancement. Calculating the base offense level at 38 and a criminal history category of IV, the court sentenced West to the minimum of a Guidelines range of 324 to 405 months.

West argues that the district court erred in denying his motion to suppress because the officers lacked probable cause for the stop. "This court reviews the district court's findings of fact for clear error and its legal conclusions about probable cause . . . de novo." *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007).

Committing a crime in an officer's presence gives probable cause to seize the person. *United States v. Banks*, 553 F.3d 1101, 1104 (8th Cir. 2009). The district court found probable cause under Iowa Code § 321.326: "Pedestrians shall at all times when walking on or along a highway, walk on the left side of such highway." The district court believed the officer who testified that West was "walking down the middle of 13th Street." Probable cause existed for the stop, and thus the district court properly denied the motion to suppress.

West contends that the government knowingly or recklessly used false testimony, violating due process. *See United States v. Perkins*, 94 F.3d 429, 432 (8th Cir. 1996). This court reviews claims of constitutional error de novo. *United States v. Booker*, 576 F.3d 506, 510 (8th Cir. 2008). But to preserve an error for appellate review, the defendant must make a timely objection. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). "[F]or an objection to be timely it must be made at the earliest possible opportunity after the ground of objection becomes apparent, or it will be considered waived." *United States v. Carter*, 270 F.3d 731, 735 (8th Cir. 2001) (quotation omitted). West requested a mistrial after the government's closing argument because of an alleged use of false testimony during witness examinations. This objection, made after the district court had the opportunity "to correct or avoid the mistake," was not timely. *See Puckett v. United States*, 129 S.Ct. 1423, 1428 (2009); *Moylan v. Maries County*, 792 F.2d 746, 751 (8th Cir. 1986) ("motion for a mistrial, filed several days after the alleged error occurred and after the presentation of evidence was concluded" did not preserve the error).

Accordingly, plain error review applies. *United States v. Davis*, 534 F.3d 903, 914 (8th Cir. 2008). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." *United States v. Vaughn*, 519 F.3d 802, 804 (8th Cir. 2008). "[W]e reverse for plain error only where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Davis*, 534 F.3d at 914 (quotation omitted).

To prove use of false testimony, West must show that "(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007). Merely inconsistent statements do not establish use of false testimony. *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995). "[I]t is not improper to put on a witness whose testimony may be impeached." *Perkins*, 94 F.3d at 433. *Compare Bass*, 478 F.3d at 951 (no due process violation where the witness told different stories and defense counsel knew as much as government), *with Napue v. Illinois*, 360 U.S. 264, 265, 272 (1959) (holding due process violation where the prosecutor promised the witness "consideration," the witness testified the prosecutor promised nothing, but the prosecutor did not correct the witness).

West claims that the witnesses contradicted their plea agreements by stating an impossibly large amount of drug dealing. One witness testified that West's drug activity was more extensive than the witness admitted in his plea agreement. Another witness did not mention West in the plea agreement but testified against him. The government presented the plea agreements at trial, and defense counsel questioned the witnesses about inconsistencies. "The jury is responsible for assessing the credibility of witnesses and resolving conflicts in testimony, and its conclusions on these issues are virtually unreviewable on appeal." *United States v. Thompson*, 560 F.3d 745, 748–49 (8th Cir. 2009); *see also United States v. Coleman*, 525 F.3d 665, 666 (8th Cir. 2008) ("We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses."). The district court did not err, let alone plainly err, in denying West's motion for a mistrial.

According to West, there is an insufficient connection between the gun and the drug conspiracy to support a firearm enhancement. This court reviews a dangerous-weapon enhancement for clear error. *See United States v. Burling*, 420 F.3d 745, 749 (8th Cir. 2005). A § 2D1.1(b)(1) enhancement applies if the government proves by a preponderance of the evidence "that a weapon was present and that it is not clearly

improbable that the weapon was connected with the criminal activity." ***United States v. Boyce***, 564 F.3d 911, 916 (8th Cir. 2009) (internal quotations omitted); *see* **U.S.S.G. § 2D1.1**, application note 3. A connection exists if the weapon was used "during acts that were 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" ***United States v. Savage***, 414 F.3d 964, 966 (8th Cir. 2005), *citing* **U.S.S.G. § 1B1.3(a)(2)**. In determining relevant conduct, the district court "should consider the similarity, regularity, and temporal proximity of the conduct." ***United States v. Geralds***, 158 F.3d 977, 979 (8th Cir. 1998); *see also* ***United States v. Lange***, 592 F.3d 902, 906 (8th Cir. 2010) ("Offenses are part of 'the same course of conduct' when they are part of an 'ongoing series of offenses.'"), *quoting* **U.S.S.G. § 1B1.3**, comment. (n.9(A)).

At sentencing, a co-conspirator testified to seeing West with a firearm twice. In February 2005, the witness was visiting a house to buy marijuana (but not from West). West showed him a .22 caliber handgun. The same witness saw him wearing a .380 caliber handgun in May 2005. (The witness was selling crack weekly to West during this time period.) On neither occasion did the witness see West dealing drugs. West claims it is clearly improbable that the gun was connected with the drug conspiracy. *See, e.g.*, ***United States v. Khang***, 904 F.2d 1219, 1220–23 (8th Cir. 1990); ***United States v. Green***, 889 F.2d 187, 189 (8th Cir. 1989).

In *Khang*, police made a controlled delivery of opium to Khang's residence and found a pistol in the closet. This court reversed the firearm enhancement because the government stipulated that the gun had "no relationship to the crime to which Khang pled guilty." ***Khang***, 904 F.2d at 1220. In *Green*, officers found drugs and an unloaded .22 caliber handgun in Green's house. Green testified that she had never used the gun. This court affirmed the enhancement because she had the gun "in the same place where she conducted drug transactions." ***Green***, 889 F.2d at 189.

The facts here are closer to *Green*. The witness saw the .22 in a house where drug dealing occurred, albeit around two and a half years before the beginning of the drug conspiracy in November 2007. West was, however, already dealing crack

regularly in the same neighborhood during the time periods the witness saw him with a gun. *See Burling*, 420 F.3d at 750 (district court may consider "relevant conduct outside the conviction"); *Savage*, 414 F.3d at 967 (affirming firearm enhancement where the defendant possessed a gun around six months before the beginning of the offense of conviction while dealing the same drug as in the offense); *see also United States v. Anderson*, 243 F.3d 478, 485 (8th Cir. 2001) (drug dealing that occurred several years before the offense of conviction was relevant conduct). As the district court found, it was not clearly improbable that the gun possession was "part of the same course of dealing or pattern of activity with similar participants."

West asserts numerous sentencing errors. This court determines first whether the district court committed significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

West claims the district court failed to explain adequately its decision to impose a within-Guidelines sentence. He argues that the court treated him like a "drug kingpin" and did not consider the racially disparate impact of the crack/powder guidelines. A Guidelines sentence does not "necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007). The district court "followed the proper procedure by first calculating the guidelines range, asking for departures, considering the § 3553(a) factors, and imposing a sentence." *Vaughn*, 519 F.3d at 806. The court considered West's criminal history and "the need to avoid unwarranted sentencing disparity." The judge noted that "this is one of the most significant [drug] conspiracies that I've seen since I've been a district judge." The court adequately explained its decision.

West objects that there was a sentencing disparity with his co-conspirators, almost all of whom received less time. These witnesses cooperated with the

government. Sentencing disparities based on cooperation are not unwarranted. *United States v. Crumley*, 528 F.3d 1053, 1068 (8th Cir. 2008).

Finally, West contends that his sentence was substantively unreasonable because it was based on the crack/powder ratio in the Guidelines. This court "review[s] the substantive reasonableness of the sentence under the abuse-of-discretion standard considering the totality of the circumstances." *United States v. Alvizo-Trujillo*, 521 F.3d 1015, 1017 (8th Cir. 2008) (internal quotations omitted). A within-Guidelines sentence, as here, may be presumed reasonable on appeal. *United States v. Guarino*, 517 F.3d 1067, 1068 (8th Cir. 2009). A sentence based on the Guidelines' crack/powder ratio is not necessarily unreasonable. *See Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (holding that district court "may" consider the crack/powder ratio); *United States v. Roberson*, 517 F.3d 990, 995 (8th Cir. 2008) (*Kimbrough* does not require district courts to disregard the crack/powder ratio). The district court discussed the crack/powder ratio at length. West has failed to show that his sentence is unreasonable. *See United States v. Otterson*, 506 F.3d 1098, 1100 (8th Cir. 2007).

The judgment of the district court is affirmed.

_____