**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SAMUEL SILVA,

    Defendant - Appellant.

No. 17-2030
(D.C. No. 1:14-CR-04067-JAP-1)
(D. N.M.)

———————————————————

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:14-CR-04067-JAP-1)**
———————————————————

John Arceci, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with him on the brief) Denver, Colorado for Defendant – Appellant.

Edward Han, Assistant United States Attorney (James D. Tierney, Acting United States Attorney with him on the brief) Albuquerque, New Mexico for Plaintiff – Appellee.
———————————————————

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.
———————————————————

**MATHESON**, Circuit Judge.
———————————————————

    Samuel Silva alleges three trial errors:

1. The district court erred by allowing the prosecution to present evidence of a previous felony conviction to support the charge of his being a felon in possession of a firearm.

2.  The evidence was insufficient to convict him of being a felon in possession of a firearm.

3.  The district court plainly erred by admitting testimony from a DNA expert who had made typographical errors in the course of performing her DNA analysis.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual Background*

On April 23, 2014, a man, later determined by the jury to be Mr. Silva, knocked on A.S.'s door.  After a brief discussion, he brandished a .45 caliber pistol and forced his way in.  The intruder demanded money, jewelry, weapons, and the keys to A.S.'s car, and bound A.S.'s hands and feet using electrical wire.  While the man looked for the car keys, A.S. removed her restraints, escaped to a neighbor's home, and called the police.

The man next went to a nearby home and ordered C.L. to open his door.  When C.L. declined, he shot the glass door and entered the home.  After C.L. unsuccessfully attempted to arm himself, the intruder demanded C.L.'s truck keys, shot him in the leg, and fled, leaving behind several items stolen from A.S.'s home.  On the same day, a homeowner called the police to report a truck sitting in his driveway.  The truck, later identified as C.L.'s, had blood on the steering wheel and the driver's side door.

Police collected DNA from the truck and the other crime scenes, and matched it with a sample from Mr. Silva in a database.  The victims positively identified Mr. Silva in photo arrays.  An arrest warrant and search warrant were issued for Mr. Silva.

On July 1, 2014, police apprehended Mr. Silva while he was driving a rented

2

Nissan Murano. The arresting officer noticed a handgun wedged in the driver's seat. In searching the car later, officers also located heroin, Flexicuffs (plastic handcuffs), and drug paraphernalia in the vehicle. Alcohol, Tobacco, and Firearm ("ATF") agents identified the firearm as a Smith and Wesson model 411, .40 caliber semiautomatic pistol. They also identified ammunition seized from the Nissan as one round of Remington brand .40 caliber ammunition and eight rounds of CBC brand .40 caliber ammunition. The pistol and all of the ammunition were manufactured outside of New Mexico. At the time of his arrest, Mr. Silva had an extensive criminal history, including convictions for multiple felonies.

## B. *Procedural Background*

### 1. Indictment

Following Mr. Silva's arrest, a federal grand jury returned a six-count indictment against him. Counts One through Five concerned the April 23, 2014 incidents and charged Mr. Silva with: (1) attempted carjacking in violation of 18 U.S.C. § 2119(1), (2) knowingly using and carrying a firearm in furtherance of the attempted carjacking in violation of 18 U.S.C. § 924(c), (3) carjacking in violation of 18 U.S.C. § 2119(2), (4) knowingly using and carrying a firearm in furtherance of a carjacking, and (5) knowingly possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Count Six concerned Mr. Silva's arrest on July 1, 2014, and charged him with knowingly possessing "a Smith and Wesson Model 411 .40 caliber semi-automatic pistol," "approximately one (01) Remington brand .40 caliber cartridge," and

3

"approximately eight (08) CBC brand .40 caliber cartridges," in violation of §§ 922(g)(1) and 924(a)(2). ROA, Vol. 1 at 32–33. Both Counts Five and Six specified Mr. Silva's eight previous felony convictions. Mr. Silva pled not guilty to all counts.

2. **Pretrial Motions**

Two pretrial motions are relevant here. First, the district court granted Mr. Silva's motion to sever Count Six from Counts One through Five for separate trials. Second, Mr. Silva moved to prevent the jury in each trial from hearing that he was a convicted felon. He offered instead to stipulate that he is a convicted felon and asked the court to instruct the jury that he is a "prohibited person" for purposes of the charges in Count Five and Six for violations of § 922(g)(1). *Id*. at 95-96. He argued that "any evidence that Mr. Silva has a felony record creates the unacceptable risk that the jury could improperly use this information, not to determine Mr. Silva's guilt for the charged offense, but as proof of his bad character." *Id.* at 97. The district court denied the motion because it "lack[ed] merit under Tenth Circuit law." *Id.* at 219 (citing *United States v. Prieto*, 565 F. App'x 758, 763 (10th Cir. 2014) (unpublished)).

3. **First Trial – Count Six**

The first trial concerned Count Six. Before the trial, Mr. Silva stipulated that he had a prior felony conviction and that the weapon found in the car affected interstate commerce.

At trial, the prosecution presented evidence on whether Mr. Silva had "knowingly possessed" the firearm found in the car. Officer David Nix, who searched the car after it had been towed, identified Exhibit 1 as the "firearm that we recovered

4

from the front driver's seat of the Nissan Murano." ROA, Vol. 5 at 244, 246. ATF Officer Derek Wright also testified. The prosecutor showed him Exhibits 1, 2A, and 2B and described 2A and 2B as "a magazine and some ammunition." *Id.* at 263. Officer Wright testified that the ammunition consisted of "nine .40 caliber cartridges. One is a Remington Peters brand and the others are CBC brand, .40 caliber ammunition." *Id.* Neither he, nor any other witness, identified the ammunition as having been found within the gun from the Nissan Murano.

The jury returned a guilty verdict.

### 4. **Second Trial – Counts One through Five**

The second trial focused on whether Mr. Silva was the person who committed the home invasions on April 23, 2014. A flawed identification procedure barred C.L. from giving identification testimony, and A.S. could not identify anyone in the courtroom as the intruder. The only identification evidence against Mr. Silva was based on DNA analysis.

The jury heard testimony from DNA analyst Alanna Williams about blood samples found in C.L.'s truck and inside C.L.'s house. Ms. Williams testified that, after the home invasions, she determined that DNA from inside the door of C.L.'s truck matched Mr. Silva's profile in the DNA database. Police arrested Mr. Silva based on this identification. After his arrest, he provided a cheek swab, which Ms. Williams matched to the sample from the truck and one of three samples from C.L.'s house. She concluded that "[Mr.] Silva could not be excluded as the donor" and that the probability anyone else

5

was the source of the DNA found in the truck and in C.L.'s home was exceptionally low. *Id.* at 689, 691, 692.

As we discuss further below, the defense cross-examined Ms. Williams about typographical errors in the record-keeping of the samples.

The jury found Mr. Silva guilty of all five charges. The court imposed a total sentence of 564 months in prison.

## II.  DISCUSSION

### A.  *Motion to Exclude Reference to Prior Felony Conviction*

The parties have devoted most of their arguments in their briefs and at oral argument to whether the district court erred in refusing to exclude reference to Mr. Silva's having previously been convicted of a felony. A previous felony conviction is an element of the offenses charged under 18 U.S.C. § 922(g)(1) in Counts Five and Six of Mr. Silva's indictment.

### 1.  **Standard of Review**

We review legal interpretations of the Federal Rules of Evidence de novo. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014). We review evidentiary decisions for abuse of discretion. *Id.*; *United States v. Griffin*, 389 F.3d 1100, 1103 (10th Cir. 2004). In particular, "[w]e will disturb a trial court's decision to admit evidence under Rule 403 only for an abuse of discretion." *United States v. Charley,* 189 F.3d 1251, 1260 (10th Cir.1999); *see Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997) ("The standard of review applicable to the evidentiary rulings of the district court is abuse of discretion.").

6

"A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001) (quotations omitted).  A district court's decision will be reversed "only if the court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotations omitted).

2. **Additional Procedural Background**

Mr. Silva filed a pretrial motion to "prevent the jury from hearing evidence that Mr. Silva is a convicted felon."  ROA, Vol. 1 at 95.  He was "prepared to stipulate that he has been convicted of each of the enumerated felonies set out in the Grand Jury Indictment," *id.* at 96, which, he said, would be "a conclusive stipulation to an essential element of the crime charged in 18 U.S.C. § 922(g)(1)," *id.* at 99.  Mr. Silva "request[ed] that the Court instruct the jury in broader terms that Mr. Silva has stipulated that he is a 'prohibited person.'"  *Id.* at 96.  He argued that "any evidence that Mr. Silva has a felony record creates the unacceptable risk that the jury could improperly use this information, not to determine Mr. Silva's guilt for the charged offense, but as proof of his bad character."  *Id.* at 97.  He primarily relied on Federal Rule of Evidence 403 and *Old Chief*, 519 U.S. 172.

In response, the Government conceded that, if Mr. Silva stipulated he was a convicted felon, it could not inform the jury about "the nature of the previous felony."  ROA, Vol. 1 at 213.  But it argued that *Old Chief* did not require the court to modify the relevant pattern jury instruction to say that Mr. Silva was a "prohibited person" rather

7

than a "person who has been previously convicted in any court of a felony." *Id.* at 214 (quoting Tenth Circuit Pattern Jury Instruction 2.44 – Possession of a Firearm by a Convicted Felon 18 U.S.C. § 922(g)(1)).

At a hearing on this motion, counsel for Mr. Silva said, "The record should reflect that we are prepared to stipulate to the fact of Mr. Silva's prior felony conviction so long as it is clear from the record that we are not giving up our opportunity to challenge that matter on appeal." ROA, Vol 4 at 48. The district court denied the motion, stating it lacked merit under *Prieto*, 565 F. App'x. at 763. The court said it would follow the Tenth Circuit's pattern jury instruction, which required the jury to find Mr. Silva had been previously convicted of a felony.

At the first trial, the judge, just before presenting the jury instructions, read the following stipulation to the jury:

> The first stipulation is entitled Stipulation Regarding Prior Felony Convictions. It reads as follows: The parties, by and through their undersigned counsel stipulate and agree as follows:
>
> 1. [T]he defendant, Samuel Silva, prior to July 1, 2014, had been convicted of a crime punishable by imprisonment for a term exceeding one year. That is, a felony offense, as charged in the indictment in this case.
>
> 2. [T]his stipulated fact is proved beyond a reasonable doubt and may be read to the jury at trial.
>
> This stipulation also relieves the government of its burden of proof with regard to the defendant's status as a felon at the time relevant to the charge contained in the indictment.

ROA, Vol. 5 at 272.

The district court instructed the jury as follows:

8

The defendant is on trial before you upon an indictment brought by the grand jury charging as follows:

On or about July 1, 2014, in Bernalillo County, in the District of New Mexico, the defendant, Samuel Silva, having been convicted of a felony crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting commerce, a firearm and ammunition:

1. a Smith & Wesson model 411 .40 caliber semiautomatic pistol;

2. approximately one Remington brand caliber cartridge; and

3. approximately eight CBC brand .40 caliber cartridges.

In violation of 18 United States Code Section[s] 922(g)(1) and 942(a)(2).

*Id.* at 276-77 .[1]  The court further instructed:

To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt: . . .

Second, the defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm or ammunition.

*Id.* at 278.  This instruction was based on Instruction 2.44 – Possession of a Firearm by a Convicted Felon, from the Tenth Circuit Pattern Jury Instructions.

At the second trial, the judge, just before presenting the jury instructions, read the following stipulation to the jury:

---

[1] The judge also read this passage from the indictment to the jury venire at the beginning of the trial.

This recitation of the charge did not include Mr. Silva's prior eight felonies that were listed in the indictment in both Counts Five and Six.  The court appeared to grant Mr. Silva's request made at the hearing on his motion to exclude:  "We would rely on the *Old Chief* case to at the very least eliminate the particular felonies that are enumerated in the grand jury indictment . . . ."  ROA, Vol. 5 at 143.

The parties, by and through their undersigned counsel, stipulate and agree as follows:

1. The defendant, Samuel Silva, prior to April 23, 2014, had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, as charged in the indictment in this case.

2. This stipulated fact is proved beyond a reasonable doubt and may be read to the jury at trial.

This stipulation also relieves the government of its burden of proof with regard to the defendant's status as a felon at the time relevant to the charge contained in the indictment.

*Id.* at 759.

The district court instructed the jury as follows:

The defendant is on trial before you upon an indictment brought by the grand jury charging as follows: . . .

Count 5: On or about April 23, 2014, in Bernalillo County, in the District of New Mexico, the defendant, Samuel Silva, having been convicted of a felony crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting commerce, ammunition, approximately two Sellier and Bellot Brand .45 caliber cartridges, in violation of 18 United States Code Sections 922(g)(1) and 942(a)(2).

*Id.* at 763-65.[2] The court further instructed as to Count 5 that:

To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt: . . .

Second: The defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the ammunition . . . .

---

[2] The judge also read this passage from the indictment to the jury venire at the beginning of the trial.

10

*Id.* at 771. This instruction was, again, based on Instruction 2.44 – Possession of a Firearm by a Convicted Felon, from the Tenth Circuit Pattern Jury Instructions.

3. **Legal Background**

   a. *18 U.S.C. § 922(g)(1)*

The felon-in-possession statute, 18 U.S.C. § 922(g)(1), provides that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to . . . possess in or affecting commerce, any firearm or ammunition." The Government must prove "(1) [the defendant] was previously convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017).

   b. *Federal Rules of Evidence 403 and 404*

Evidence of a defendant's previous criminal conviction must meet the requirements of Federal Rule of Evidence 404(b) to be admissible. Rule 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," essentially barring evidence of prior bad acts to show someone has a propensity to act in a certain way. But the second part of Rule 404(b) allows this evidence for other purposes, including as evidence of an element of the offense. *See Old Chief*, 519 U.S. at 184 (Rule 404(b) "deal[s] with admissibility when a given evidentiary item has the dual nature of legitimate evidence of an element and illegitimate evidence of character"). Even if such evidence may be admissible under Rule 404(b), it could

11

nevertheless be excluded under Federal Rule of Evidence 403.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "'Unfair prejudice' within its context means an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee note to 1972 proposed rules. "[A]s to a criminal defendant, [it] speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. In deciding whether to exclude evidence under Rule 403, "consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction" and "[t]he availability of other means of proof." Fed. R. Evid. 403 advisory committee note to 1972 proposed rules.

"The district court has considerable discretion in performing the Rule 403 balancing test," but "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules 'is an extraordinary remedy and should be used sparingly.'" *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)). The district court need not expressly state whether "the probative value of the evidence substantially outweighed its potential for unfair prejudice" where "th[ose] determinations are supported by the record."

12

*United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir. 1999).[3]

    c.  Old Chief v. United States

This appeal turns on the Supreme Court's decision in *Old Chief*. Like Mr. Silva, Mr. Old Chief was indicted for violating 18 U.S.C. § 922(g)(1)—being a felon in possession of a firearm. He admitted having a felony conviction, but he denied possession of a firearm. "[S]ensibly worried" that evidence of his prior conviction for assault causing serious bodily injury would unfairly prejudice the jury, he moved for an order to exclude any evidence about his prior conviction other than a stipulation that he had been convicted of a felony. *Id.* at 175, 185. The prosecution rejected the stipulation and was allowed to introduce, over Mr. Old Chief's Rule 403 objection, the order of judgment and commitment for the prior conviction. The jury convicted Mr. Old Chief. *Id.* at 175-77. The Ninth Circuit affirmed. *Id.* at 177.

The Supreme Court reversed, holding the district court abused its discretion by allowing the prosecution to reject the stipulation and present detailed information about the prior conviction. The government's evidence should have been excluded under Rule 403 when equally probative but less prejudicial alternative evidence—the stipulation of a prior felony conviction—was available. *Id.* at 191. The Court said that the "name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant,"

---

[3] An "express articulation of the 'purpose' for . . . evidence" may be required when evidence is admitted under Federal Rule of Evidence 404(b), but "express articulation of the district court's Rule 403 analysis on whether the probative value of the 404(b) evidence outweighed the prejudicial effect" is not required. *Lazcano-Villalobos*, 175 F.3d at 847.

especially when the "prior conviction was for a gun crime or one similar to other charges in a pending case." *Id.* at 185.

The Court described the proper Rule 403 analysis as calling for the trial judge "to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well." *Id.* at 182. When an alternative—in this instance Mr. Old Chief's proffered stipulation—has "substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Id.* at 183.

The Court acknowledged the government's interest in choosing how to present its case, recognizing "the offering party's need for evidentiary richness and narrative integrity," *id.* at 183, and "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense," *id.* at 189. In this instance, however, this "accepted rule" had "virtually no application when the point at issue is a defendant's legal status." *Id.* at 190. Allowing the prosecution to introduce the details of the previous offense would add nothing more than the stipulation would provide to prove the prior felony element of the felon-in-possession offense. "The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission underscored in the court's jury instructions." *Id.* at 190-91.

14

4. **Analysis**

In conformance with *Old Chief*, the information presented to the jury in Mr. Silva's trials to support the felon status element of § 922(g)(1) was limited to a stipulation stating that Mr. Silva had been convicted of a felony offense. The prosecution did not introduce evidence about the name or nature of the prior offense. On its face, the district court's handling of this issue matches what the Supreme Court said should have happened at Mr. Old Chief's trial. Indeed, the Government argues we should affirm on this ground alone. But further analysis is necessary because this case is not the same as *Old Chief*.

Unlike Mr. Old Chief, who offered to stipulate to having a previous felony conviction, Mr. Silva opposed such a stipulation. He wished to stipulate that he was a "prohibited person" under § 922(g)(1) rather than admit to a felony conviction. And unlike the prosecutors in *Old Chief*, the prosecutor here did not seek to introduce the name or nature of Mr. Silva's felony convictions. Instead, the Government agreed to the stipulation that Mr. Silva was previously convicted of a felony. Finally, unlike the district court in *Old Chief*, the district court here limited any mention of Mr. Silva's felon status to the stipulation and reference in the jury instructions to the Government's need to prove the defendant had previously been convicted of a felony.

The district court did not abuse its discretion in rejecting Mr. Silva's proposed stipulation in favor of the Government's stipulation. In addition, performing a de novo Rule 403 review, we reach the same conclusion as the district court because the probative value of the Government's stipulation was not substantially outweighed by its prejudicial

15

effect, even taking Mr. Silva's alternate stipulation into account.

a. *No abuse of discretion*

Mr. Silva urges us to focus on the analysis in *Old Chief* that calls for the district court, when faced with a Rule 403 objection to the admissibility of certain evidence, to consider probative value and unfair prejudice in light of available substitutes for that evidence. *Old Chief*, 519 U.S. at 182. The *Old Chief* Court quoted the Rule 403 advisory committee notes explaining that a trial judge should consider alternative methods of proof that may be less prejudicial to the defendant. *Id.* at 184 (quoting Fed. R. Evid. 403 advisory committee notes). The Court said the district court should have compared the proposed felony offense stipulation with the prosecution's evidence of the record of the prior offense. *Id.* Here, Mr. Silva argues that the district court should have (1) compared his proposed "prohibited person" stipulation with the "felony offense" stipulation, (2) determined that the former was equally probative and less prejudicial than the latter, and (3) admitted the "prohibited person" stipulation instead of the "felony offense" stipulation and instructed the jury accordingly.

Presented with the alternative stipulations to compare, the district court chose the "felony offense" stipulation. In *United States v. Clark*, 184 F.3d 858 (D.C. Cir. 1999), the D.C. Circuit also considered whether the district court should have admitted a stipulation that the defendant was a "prohibited person" rather than a convicted felon, *id.* at 865-66. It upheld the district court's use of the felony-offense stipulation, saying "*Old Chief* did not, and does not, require" more than keeping from the jury the name and offense of the prior conviction. *Id.* at 867.

16

Mr. Silva faults the district court for not expressly stating its Rule 403 analysis, but his motion to exclude evidence of his prior felony discussed Rule 403 and *Old Chief*, *see* ROA, Vol. 1 at 95-101; his counsel and the court discussed *Old Chief* at the ensuing hearing, ROA, Vol. 4 at 47-48; and the court's ruling can reasonably be understood as the product of comparing the alternatives and of Rule 403 balancing. Moreover, we have said that a district court need not state whether "the probative value of the evidence substantially outweighed its potential for unfair prejudice" when "th[ose] determinations are supported by the record." *Lazcano-Villalobos*, 175 F.3d at 846. The record supports the district court's determination in this case.

b. *De novo Rule 403 review*

Even where a district court failed to make an explicit finding to support its Rule 403 ruling, "when the record is such that we can do our own de novo balancing of the Rule 403 factors," we may do so "without requiring a remand of that issue to the district court." *United States v. McVeigh*, 153 F.3d 1166, 1189 (10th Cir. 1998). The record here is sufficient for us to take this course. Because two alternative stipulations were offered, we "take account of the full evidentiary context of the case" and "evaluate the degrees of probative value and unfair prejudice" for both proposed stipulations. *Old Chief*, 519 U.S. at 182.

(i) Probative value

Mr. Silva contends that calling him a "prohibited person" is just as probative as calling him a "convicted felon." We are not convinced that is so. Unlike in *Old Chief*, where the defendant's proposed stipulation fully satisfied the felon-status element of

17

§ 922(g)(1), Mr. Silva's "prohibited person" language varies from the statute, which requires proof that he had been previously convicted of a felony. Using the words of the statute in the stipulation enabled the government to "satisfy the jurors' expectations about what proper proof should be." *Old Chief*, 519 U.S. at 188.

(ii) Unfair prejudice

Even assuming that using "prohibited person" is just as probative as "convicted felon," it does not follow that the "probative value" of the stipulation used in this case was "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Although "convicted felon" may have a more prejudicial connotation than "prohibited person," unlike in *Old Chief*, the prosecution here did not attempt to introduce the name and nature of any of Mr. Silva's prior convictions. And in *Old Chief*, the details of the defendant's prior conviction and its similarity with the charge against him turned the Rule 403 balance against the government. This was so even though "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." *Old Chief*, 519 U.S. at 183. Here, the Government did not seek to introduce evidence on "all the circumstances surrounding the offense;" it limited the evidence to a stipulation of felony status. The jury did not hear any information about Mr. Silva's felony conviction other than that he had one. The stipulation did not create a "substantial[] . . . danger of . . . unfair prejudice" for Mr. Silva. Fed. R. Evid. 403.

18

(iii)  Confusion

Also favoring the Government in the Rule 403 balancing is the reasonable possibility that the words "prohibited person" could confuse the jury.  Under Rule 403, "confusing the issues" is one of the listed bases to exclude evidence—in this instance, the proposed stipulation containing "prohibited person."  Mr. Silva argues it would not have been confusing to tell the jury that he is a "prohibited person" and that a "prohibited person" cannot possess a firearm, but that formulation still does not clarify the meaning of "prohibited person," a general term that lacks specificity and context.  By contrast, the stipulation presented to the jury defined someone who has a "felony offense" as having "been convicted of a crime punishable by imprisonment for a term exceeding one year." ROA Vol. 5, at 272, 759;  *see United States v. Higdon*, 638 F.3d 233, 242-43 (3rd Cir. 2011) (discussing how jurors may become confused as to why a defendant is on trial for possessing a gun if they are not aware that the defendant had previously been convicted of a felony); *see also Clark*, 184 F.3d at 867 (noting that doubt as to why someone is prohibited from possessing a firearm "may influence the jury when it considers the possession element" (quotations omitted)).

\* \* \* \*

Because the parties presented the district court with competing stipulations to compare and the court, after hearing written and oral argument from counsel, chose the Government's stipulation based on *Old Chief* and *Prieto*, 565 F.App'x at 763, we think the district court considered its options in light of Rule 403 and did not abuse its discretion.  Alternatively, based on our own de novo Rule 403 analysis, we find no error

19

in the district court's presenting the stipulation and the jury instruction regarding Mr. Silva's prior felony conviction.  We affirm the district court on this issue.

### B.  *Sufficient Evidence Supported Mr. Silva's Conviction on Count Six*

Mr. Silva contends the evidence at trial was insufficient to convict him on Count Six because the Government failed to prove that he possessed the ammunition charged in the indictment.  As we explain below, even if Mr. Silva is correct about insufficient proof that he possessed the ammunition, there was ample proof to support his Count Six conviction based on his possession of a firearm.

### 1. **Standard of Review**

Whether the Government presented sufficient evidence to support a conviction is generally reviewed de novo.  *See United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013).  We "consider[] the evidence in the light most favorable to the government to determine whether any rational jury could have found guilt beyond a reasonable doubt." *United States v. Los Dahda*, 853 F.3d 1101, 1106 (10th Cir. 2017).  "We may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017) (quotations and alteration omitted).

Because Mr. Silva did not move for acquittal on Count Six under Federal Rule of Civil Procedure 29(a), our review is technically for plain error.  *Id.* at 1257 n.16.  "But we typically review [a] sufficiency claim as if it had been raised below because the applicable standard is essentially the same as plain error."  *Id.*  Here, we determine the

20

evidence was sufficient to support Mr. Silva's conviction—resulting in no error—so his challenge fails at step one of plain error review. *See id.*

2. **Count Six and the Rule of Conjunctive Charges**

Mr. Silva argues his Count Six § 922(g)(1) conviction should be reversed because he was charged with possession of a gun *and* ammunition and the Government proved only the former. He misunderstands the law of conjunctive charging.

When alternative means to commit a crime are stated disjunctively in the statute and charged conjunctively in the indictment, proof of any one of the means will suffice to convict. *United States v. Pauldino*, 443 F.2d 1108, 1112 (10th Cir. 1971). As the Supreme Court put it, "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970). We have recognized this rule in numerous cases. *See*, *e.g.*, *United States v. DeChristopher*, 695 F.3d 1082, 1095 (10th Cir. 2012).

3. **Analysis**

We affirm Mr. Silva's conviction on Count Six because, even assuming the Government did not prove Mr. Silva's possession of the ammunition, his possession of the gun was enough to support the conviction.

The statute, indictment, and proof in this case provide an apt example of how the conjunctive charging rule works in practice when a crime is (1) stated in the statute in the disjunctive, (2) charged in the indictment in the conjunctive, and (3) proved at trial in the disjunctive. The felon-in-possession statute, 18 U.S.C. § 922(g)(1), makes it "unlawful

21

for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm *or* ammunition." 18 U.S.C. § 922(g)(1) (emphasis added). A felon can violate the statute by knowingly possessing "any firearm *or* ammunition," as stated in the disjunctive.

Count Six of the indictment charged Mr. Silva in the conjunctive with possessing:

(1) a Smith and Wesson Model 411 .40 caliber semi-automatic pistol . . . ;

(2) approximately one (01) Remington brand .40 caliber cartridge; *and*

(3) approximately eight (08) CBC brand .40 caliber cartridges.

ROA, Vol. 1 at 33 (emphasis added).

To obtain a conviction under § 922(g)(1), the Government was required to prove only that Mr. Silva possessed the firearm or ammunition, not both. *See United States v. Brown*, 504 F.3d 99, 101, 103-04 (D.C. Cir. 2007) (rejecting challenge to jury instruction that "the jury . . . could find [the defendant] guilty on the § 922(g)(1) count based on finding that he knowingly possessed either the firearm or the ammunition even though the indictment 'charges possession of a firearm and ammunition'"); *United States v. Thompson¸* 560 F.3d 745, 748 (8th Cir. 2009) (same); *United States v. Saavedra*, 549 F. App'x 739, 746 (10th Cir. 2013) (same) (unpublished). Mr. Silva does not contest that the evidence was sufficient to show he knowingly possessed the firearm.

Mr. Silva argues that "the government is bound by its charging decisions in an indictment," and that the indictment here charges possession of a gun *and* ammunition.

22

Aplt. Br. at 32. But this argument ignores the general rule that a crime may be proved in the disjunctive even if the indictment is phrased in the conjunctive. *See DeChristopher*, 695 F.3d at 1095 (holding the court did not amend the indictment by instructing the jury in the disjunctive when the indictment was stated in the conjunctive). As applied here, § 922(g)(1) can be proved in the disjunctive—that is, with evidence showing possession of the gun *or* the ammunition. Even if the evidence was insufficient to prove Mr. Silva possessed the ammunition charged in the indictment, we may affirm if the evidence was sufficient to prove Mr. Silva possessed the firearm. Because Mr. Silva has not challenged the sufficiency of the evidence on his possession of the firearm, we affirm.

## C. *The DNA Evidence Was Admissible*

Mr. Silva argues that the testimony of the DNA analyst, Ms. Williams, should not have been admitted at the second trial on Counts One through Five because of typographical errors in identifying the DNA samples. We affirm because the district court did not abuse its discretion in determining the testimony was reliable and admissible.

### 1. **Standard of Review**

At Mr. Silva's second trial, he did not object to Ms. Williams's testimony. We therefore review admission of the testimony for plain error. *United States v. Hill*, 749 F.3d 1250, 1257 (10th Cir. 2014). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotations omitted). We find error only if it

23

was an abuse of discretion to admit the testimony. *United States v. Banks*, 884 F.3d 998, 1023 (10th Cir. 2018). Because we find no error, we do not reach the other elements.

2. **Additional Procedural Background**

The jury heard testimony about blood samples found (1) in C.L.'s truck, labeled case number 14-358<u>83</u>; and (2) inside C.L.'s house, labeled case number 14-358<u>89</u>. These samples were labeled with a "Q" to indicate the sources of the DNA were unknown. Cheek swabs from Mr. Silva and C.L. were labeled, respectively, as K-1 ("K" for "known") under 14-35883 and K-1 under 14-35889. The first two digits of these numbers—"14"—denote the year—2014. As described above, DNA analyst Ms. Williams could not exclude Mr. Silva's profile, K-1 in case number 14-35883, as the donor for the sample collected from C.L.'s truck and one of the samples from C.L.'s house.

Ms. Williams described the samples as "single source samples," which made the analysis "as easy as you can get." ROA, Vol. 5 at 696. On cross-examination of Ms. Williams, the defense pointed out that, in her digital records, the samples were described multiple times with the case numbers preceded by a 13 instead of a 14. She explained this was "a typo" and that she kept the physical test tubes with correctly-numbered labels in order. *Id.* at 702. To verify the samples, she referred to the "K" or "Q" number and the last two digits of each case number (83 and 89), rather than the first two digits (14 and 14, corresponding to the year). The typos, she said, had "nothing to do with what's labeled on the actual tube." *Id.* at 707.

24

3. **Legal Background**

Under Rule 702, the testimony of a qualified expert is admissible if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. District courts perform a gatekeeping function "to ensure expert testimony is admitted only if it is relevant and reliable." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Mr. Silva does not challenge the methods Ms. Williams used to analyze the DNA samples, but only whether those methods were reliably applied under Rule 702(d).

Questions about errors in the implementation of otherwise-reliable DNA methodology typically "go to the weight that the trier of fact should accord to the evidence, rather than its admissibility." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.06[5][b], at 702-158 (Mark S. Brodin, ed., Matthew Bender 2d ed. 2018); *see In re Urethane Antitrust Lit.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (finding no abuse of discretion for the admission of statistical evidence where the methodology used was acceptable but there were questions about how the underlying data was calculated); *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780-81

25

(10th Cir. 2009) (finding no abuse of discretion when the district court admitted evidence it found unreliable and then gave it little weight).

3. **Analysis**

The district court did not err by admitting Ms. Williams's testimony. She sufficiently explained why the typographical errors did not affect the reliability of the analysis. Even if there were a question of reliability, it was not error to consider this a question of weight rather than admissibility.

Ms. Williams explained that the errors identified by Mr. Silva were typographical only and did not affect her analysis or its result. She relied on the last two digits of each case number to verify the samples. She entered these numbers in her digital records correctly each time, and mistyped only the first two digits, which indicate the year. She also explained that the errors in the digital record did not appear on the labels affixed to the test tubes she actually kept in front of her during her analysis. She focused on keeping the test tubes in order. The district court therefore did not err in concluding that Ms. Williams reliably applied accepted DNA analysis to the samples. Her only error was in recording the first two digits of the sample number rather than the performance of the analysis. Any question about the reliability of the analysis was properly a question for the jury in deciding what weight to give the evidence. *See* 4 Weinstein & Berger, § 702.06[5][b], at 702-158. We affirm.[4]

---

[4] Mr. Silva also "preserves for further review" two issues. He acknowledges our precedent forecloses these issues and did not brief them on appeal. Aplt. Br. at 39-42.

The first challenges the reasonable doubt jury instruction. We rejected a constitutional challenge to this instruction in *United States v. Petty*, 856 F.3d 1306

## III. CONCLUSION

For the foregoing reasons, we affirm Mr. Silva's conviction on all counts.

---

(10th Cir. 2017). Since Mr. Silva filed his brief, the Supreme Court has denied certiorari in that case. *See Petty v. United States*, 138 S. Ct. 410 (2017) (Mem.).

The second "preservation issue" is whether federal carjacking and attempted federal carjacking, under 18 U.S.C. §§ 2119(1), 2119(2), are crimes of violence under 18 U.S.C. § 924(c). Mr. Silva contends that he would deserve relief if this court, or the Supreme Court, were to find that the residual clause of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague and that federal carjacking is not a crime of violence under § 924(c)(3)(A)'s force clause. We note this court recently held § 924(c)(3)(B) is unconstitutionally vague. *United States v. Salas*, 2018 WL 2074547 (10th Cir. May 4, 2018).